UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

CITIZENS FOR APPROPRIATE RURAL   )
ROADS, INC., *et al.*,                              )
           Plaintiffs,                         )
                                  )
       vs.                                           )                  1:11-cv-1031-SEB-DML
                                  )
RAY LAHOOD, in his official capacity as   )
Secretary of the United States Department of )
Transportation; MICHAEL B. CLINE, in his )
official capacity as Commissioner of the      )
Indiana Department of Transportation;       )
ROBERT F. TALLY, in his official capacity )
as Division Administrator – Indiana           )
Division of the Federal Highway               )
Administration; and VICTOR MENDEZ, in )
his official capacity as Administrator of the  )
Federal Highway Administration,              )
            Defendants.                     )

**ENTRY ON PENDING MOTION**

This matter comes before the Court on Federal Defendants' Motion to Strike[1]

[Docket No. 59], filed February 2, 2012.  Defendants Ray LaHood, Robert F. Tally, and

Victor Mendez ("Federal Defendants") have asked the Court to strike evidence submitted

(or intended to be submitted at the hearing on injunctive relief) in support of Plaintiffs'

Memorandum in Support of Motion for Preliminary Injunction [Docket No. 44], to wit:

four declarations, certain photographs, and all references by Plaintiffs thereto.

---

[1]Federal Defendants have captioned their motion as a "motion to strike and motion in
limine."  Because motions in limine are more properly raised in the setting of jury trials, we treat
Federal Defendants' motion only as a motion to strike.

Additionally, Federal Defendants request that the Court prohibit Plaintiffs from presenting live witness testimony at the upcoming hearing on Plaintiffs' Motion for Preliminary Injunction.  If the Court does permit live testimony at this hearing, Federal Defendants ask the Court to limit its scope.  For the reasons detailed in this entry, we GRANT in part and DENY in part Federal Defendants' Motion to Strike.

## Factual Background

The I-69 expansion project (the "Project") is intended to create a highway connecting Evansville, Indiana to Indianapolis, Indiana by extending the already existing I-69 interstate.  This endeavor, which has been called the largest contiguous construction project in the United States, presents benefits and opportunities in the form of new jobs, safer travel, and increased access to resources.  As expected, it also incites concerns among various individuals and organizations.  Before the Court as Plaintiffs are Citizens for Appropriate Rural Roads and the I-69 Accountability Project, both Indiana not-for-profit corporations, and several individuals who own property or reside in the proposed I-69 Corridor.  These plaintiffs, whose real property the Project will directly impact, vehemently oppose several aspects of the Project.

In preparation for various phases of the Project, the Federal Highway Administration (FHWA) and the Indiana Department of Transportation (INDOT) analyzed possible environmental effects of the Project in the "tiering" process described in 40 C.F.R. § 1502.20.  In Tier 1, the agencies analyzed the Project's potential "overarching effects" and prepared a record of decision (ROD).  In Tier 2, they have

analyzed six sections of the Project.  Each individual section either has received or will receive its own environmental impact statement (EIS) and ROD.  Plaintiffs challenge Tier 1 of this process, as well as sections 3 and 4 of Tier 2.  They allege that Defendants have violated the Administrative Procedures Act (APA), 5 U.S.C. §§ 701-06, and the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332 *et seq.*  In their nine-count complaint, they describe several of Defendants' actions as contrary to the laws of the United States:  conducting various activities before a final EIS and ROD have been issued for section 4 of the Project; failing to prepare a supplemental EIS to reflect "new" and "substantial" information as to air pollution, bridges, and archaeological sites; conducting several Project-related activities in bad faith; and converting unspecified artifacts on Plaintiffs' land.

Plaintiffs filed their Complaint in this court on August 1, 2011, seeking declaratory and injunctive relief, as well as reimbursement of reasonable attorneys' fees and costs. They filed their Motion for Preliminary Injunction on December 9, 2011 and the supporting brief on December 31, 2011.  With regard to the substance of the injunction they seek, they request an order directing Defendants:  (1) not to design or construct I-69 or spend any funds for these purposes; (2) to prepare a new Tier 1 draft and final EIS (with public review and comment periods) and a new ROD thereafter; (3) to return "artifacts taken from private property"; and (4) to stop all I-69-related work on private property if the owners are absent.  If no such injunction is granted, Plaintiffs allege that harm will inure, *inter alia*, to the region's ecosystems, natural resources, environmental

quality, endangered species (namely, the Indiana Bat and Cerulean Warbler), and the habitats of various animal species.  CARR alleges generally that the I-69 project will adversely impact its members' "recreational, aesthetic and educational interests." Plaintiffs have also provided a laundry list of specific harms which they allege will stem from Defendants' actions.

In the days leading up to the parties' hearing on the Motion for Preliminary Injunction, Plaintiffs have issued subpoenas to elicit testimony from a variety of governmental employees.  Federal Defendants oppose this action as well as the issuance of the subpoenas, contending that Plaintiffs are not entitled to a full evidentiary hearing on the issues to be decided.  Notably, Federal Defendants object to Plaintiffs' proffer of evidence that postdates the Partial Administrative Record they filed with the Court on February 2, 2012.  Federal Defendants filed their Motion to Strike contemporaneously with the Partial Administrative Record, requesting that the Court limit the scope of the upcoming hearing by striking from the record declarations—all dated December 19, 2011—of:  (1) Robert Dunlap, treasurer of the  Indiana Karst Conservancy; (2) Patrick Munson, archaeologist; (3) Plaintiff Sandra Tokarski; and (4) Plaintiff Janice Boyd, with the exception of ¶¶ 15-35 of Ms. Boyd's declaration.  Federal Defendants also move the Court to prohibit Plaintiffs from presenting live testimony at the hearing on the Motion for Preliminary Injunction, save only for testimony that relates to Article III standing, Plaintiffs' alleged irreparable injury, and the public interest in the Project.

## Legal Analysis

Our task in ruling on the pending pre-hearing motions is to define the issues and

set the parameters of the hearing on Plaintiffs' Motion for Preliminary Injunction, which

is scheduled for February 14, 2012.  Based on the briefing before us, the Court assumes

that Plaintiffs' chief purpose in seeking injunctive relief is to stop all current and pending

Project proceedings so that they may challenge the sufficiency of the administrative

record—a reprieve without which, *inter alia*, trees will be cut, water contaminated, and

air polluted.  The Court expects to employ the well-established preliminary injunction

paradigm as we consider all of the issues presented by the parties.  Specifically, we will

find injunctive relief appropriate if Plaintiffs demonstrate:  (1) a reasonable likelihood of

success on the merits;[2] (2) irreparable harm if injunctive relief is denied; and (3) an

inadequate remedy at law.  *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United*

*States of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).  If these threshold conditions are

met, we must then assess the balance of harm – the harm to Plaintiffs if the injunction is

not issued against the harm to Defendants if it is issued – and, where appropriate,

determine what effect the granting or denying of the injunction would have on nonparties

(the public interest).  *Id.*

A significant portion of Plaintiffs' argument for injunctive relief pertains to

Defendants' alleged violations of NEPA.  As Federal Defendants correctly note, NEPA

---

[2]Federal Defendants' discussion of permitting testimony pertaining to standing is relevant because standing is necessarily a component of this element of the standard for preliminary injunctive relief.  *See, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

does not confer a private right of action. *See City of Evanston v. Reg'l Transp. Auth.*, 825 F.2d 1121, 1124 (7th Cir. 1987); *Vill. of Thornton v. U.S. Army Corps of Eng'rs*, 31 F. Supp. 2d 1060, 1062 (N.D. Ill. 1998). Thus, review of agency action under NEPA is governed by the APA. *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 609 F.3d 897, 900 (7th Cir. 2010). Judicial review under the APA is well-established; it requires the district court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Such review is "limited in scope and deferential in character." *Harris v. Mut. of Omaha Cos.*, No. IP-92-1089-C, 1992 WL 421489, at *13 (S.D. Ind. Aug. 26, 1992) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).

Determining that an agency action should be set aside pursuant to 5 U.S.C. § 706(2)(A) essentially requires a district court to find no rational connection between the evidence in the record and the agency's decision. *See Bowman Transp., Inc. v. Ark.-Best Freight Sys.*, 419 U.S. 281, 285-86 (1974). In the context of NEPA, "[i]f an agency considers the proper factors and makes a factual determination on whether the environmental impacts are significant enough, that decision implicates substantial agency expertise and is entitled to deference." *Ind. Forest Alliance, Inc. v. U.S. Forest Serv.*, 325 F.3d 851, 859 (7th Cir. 2003). To make such a finding, the reviewing court considers only "the administrative record already in existence, not some new record made initially

[in that court]."  *Highway J Citizens Grp. v. Mineta*, 349 F.3d 938, 952 (7th Cir. 2003).

Limiting judicial review in this fashion ensures that "agencies adequately evaluate their

proposed course of action *before* they act and do not simply attempt to justify rash,

uninformed actions through 'post hoc' rationalizations."  *Id.* at 958 (quoting *Citizens to

Preserve Overton Park, Inc.*, 401 U.S. at 419).  Full *de novo* review, which includes

extra-record evidence, is only appropriate if the agency has employed inadequate

factfinding procedures.  *See Camp v. Pitts*, 411 U.S. 138, 142 (1973).

The foregoing standard of review places a heavy onus on plaintiffs who challenge

agency actions under NEPA and the APA.  Such plaintiffs must show:  (1) that they have

exhausted their administrative remedies; or (2) that they were prevented from doing so; or

(3) that the administrative record is so deficient that as a matter of law, it cannot support

the actions it purports to authorize.  *See Darby v. Cisneros*, 509 U.S. 137, 153-54 (1993);

*Camp*, 411 U.S. at 142.  This is a steep hill to climb, given that the Court's primary

question at the upcoming hearing will be whether the agency's process was so unjust that

it cannot support actions taken with respect to the Project and that without an injunction,

the Plaintiffs will suffer irreparable injury.  It becomes steeper yet when considering the

Supreme Court's admonishment that "a presumption of regularity attaches to

[g]overnment agencies' actions."  *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001).

Here, Defendants challenge Plaintiffs' reliance on four declarations and four

photographs as evidence to support their Motion for Preliminary Injunction.  Each item of

proffered evidence postdates the Partial Administrative Record filed by Federal

Defendants; the final document in the Partial Administrative Record is September 8, 2011, whereas the proffered photographs are dated October 29, 2011, and the proffered declarations are dated December 19, 2011.  Federal Defendants allege that Plaintiffs had ample access to the information in the Partial Administrative Record because of its overwhelming online availability and because Plaintiffs were granted several Freedom of Information Act requests.  Given Plaintiffs' access to the voluminous collection of documents supporting the agency decision, Federal Defendants deem it unsupportable for Plaintiffs now to claim that justice requires the Court to consider their extrinsic evidence. Although we certainly recognize that APA cases may prompt the consideration of extrinsic evidence if "there is no record" or "there is an emergency," *Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 444 (7th Cir. 1990), our initial view is that neither situation applies to the instant litigation.  There is plainly a well-developed administrative record upon which the agency relied in its decision making, and there appears to be no emergency.

Plaintiffs have made no showing that, with respect to the proffered exhibits, they exhausted their administrative remedies.  Plaintiffs' proffered declarations and photographs could be added as supplements to the Partial Administrative Record only if Plaintiffs succeed in demonstrating that they were heretofore unable to put this evidence before the agency for its consideration.  In other words, Plaintiffs will have to show that they moved to supplement or reopen the record, or that deficient agency procedures prevented this evidence from reaching agency decisionmakers.  Nothing to our

knowledge in the existing record before us indicates that Plaintiffs ever filed such a

motion to supplement or reopen the agency record.  Whether they are entitled at this late

juncture to seek to supplement the agency record we cannot yet determine.

Moreover, unless Plaintiffs can show that there was no way for the agency to

receive and/or consider this evidence before rendering its decision, we must be

particularly deferential in our approach to allegedly new information.  *See Balt. Gas &*

*Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983).  NEPA decisions

are to be supplemented only if "there remains major [f]ederal actio[n] to occur, and if the

new information . . . show[s] that the remaining action will [affect the environment] . . . to

a significant extent not already considered."  *Marsh v. Or. Natural Res. Council*, 490 U.S.

360, 374 (1989).  The Seventh Circuit has interpreted the term "significant," for purposes

of requiring supplementation, as follows:  "[A]n agency cannot have acted arbitrarily or

capriciously . . . unless the new information provides a *seriously* different picture of the

environmental landscape such that another hard look is necessary."  *Wis. v. Weinberger*,

745 F.2d 412, 418 (7th Cir. 1984).  Open-ended challenges on this point "do not suffice."

*Id.* at 419.  It is axiomatic that an agency could supplement its record with plenty of

"new" information and still reach the same reasoned decision.  An impeachable

administrative process—not Plaintiffs' disagreement with the end result—is ultimately

the source of irreparable injury for our purposes.  Accordingly, only extrinsic evidence

relevant to our forthcoming hearing which shows Defendants' bad faith or faulty

procedures in the administrative process will be admissible.

We conclude that the declarations, photographs, and live testimony at issue in

these motions are obviously problematic not only because of their untimely submission,

but also because of Plaintiffs' failure to traverse the appropriate administrative obstacles.

Further, assuming they are of only marginal relevance and importance, they may not

inform us in any significant way on the issue of whether the record is deficient or for

some other reason we should enjoin the Project to permit a reopening of the

administrative record.  Thus, unless Plaintiffs can demonstrate that their evidence satisfies

the standards we have detailed above, the proffered materials are irrelevant and the

Federal Defendants' Motion to Strike is GRANTED in part; live testimony of witnesses

at the upcoming hearing shall be so limited.  To the extent that Plaintiffs can show that

their proffered evidence is relevant under the applicable principles enunciated here,

Federal Defendants' Motion to Strike is DENIED in part.

      IT IS SO ORDERED.

Date:       _____02/10/2012     _____    _____

                                 SARAH EVANS BARKER, JUDGE
                                 United States District Court
                                 Southern District of Indiana

Copies to:

Jean Marie Blanton
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
jblanton@zsws.com

Albert M. Ferlo
PERKINS COIE LLP
aferlo@perkinscoie.com

Elisabeth C. Frost
PERKINS COIE LLP
efrost@perkinscoie.com

John Brett Grosko
U.S. DEPARTMENT OF JUSTICE
brett.grosko@usdoj.gov

Mick G. Harrison
mickharrisonesq@earthlink.net

Timothy J. Junk
INDIANA OFFICE OF THE ATTORNEY GENERAL
tjunk@atg.state.in.us

William G. Malley
wmalley@perkinscoie.com

Jared S. Pettinato
UNITED STATES DEPARTMENT OF JUSTICE
jared.pettinato@usdoj.gov

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov