UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CITIZENS FOR APPROPRIATE RURAL ROADS, INC., et al, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 1:11-cv-01031-SEB-DML |
| RAY LAHOOD, et al, | ) ) ) ) | |
| Defendants. | ) | |

# Entry on Motions to Quash Hearing Subpoenas

Before the court are motions to quash subpoenas *duces tecum* the plaintiffs served on federal and state officials and non-parties, seeking their testimony at the preliminary injunction hearing set in this matter and requiring them to bring with them documents described in the subpoenas. (Dkts. 67, 69, 75, 81, 83, 85).

On August 1, 2011, the plaintiffs filed this suit seeking declaratory and injunctive relief with respect to the I-69 highway extension project from Indianapolis to Evansville, Indiana. On December 9, 2011, the plaintiffs filed a motion for preliminary injunction requesting the court to enjoin the defendants from taking any further actions to implement agency decisions regarding the design, construction, and acquisition of property for the I-69 extension. The magistrate judge ordered plaintiffs to file a supporting brief by December 19, 2011, a deadline they missed. The plaintiffs asked for additional time, explaining that they needed more time so that they could develop fact witness declarations and brief the merits of their claims. (Dkt. 40). They also told the court that an extended deadline would still allow the defendants sufficient time to respond and

not interfere with a February hearing date. The plaintiffs filed their supporting brief on December 31, 2011, which the court allowed, and a hearing date was set for February 8.

**The Subpoenas**

Less than one week before the scheduled February 8 hearing, the plaintiffs served eight subpoenas on state and federal officials and non-parties, each directing the person to appear at the hearing to testify and to bring documents. When the court on its own motion reset the hearing for February 14, the plaintiffs "renewed" these eight subpoenas by serving new ones on February 8 to the same witnesses and for the same documents, and they added a ninth subpoena *duces tecum* served February 8 to a second official with the Federal Highway Administration ("FEHA").

Six of the subpoenaed individuals (one with FEHA, two with the Indiana Department of Transportation ("INDOT"), one with the Indiana Department of Environmental Management ("IDEM"), and two with Bernardin Lochmeuller & Associates ("BLA"), an engineering firm, are directed to bring to the hearing "[a]ll memoranda, reports, emails, or other records referencing the 2009 Fleet mix data and any quality review of such data."

Three of the subpoenaed individuals (one with FEHA, one with the United States Fish and Wildlife Service ("FWS"), and one with BLA) are directed to bring to the hearing documents that relate to what the plaintiffs describe as the Ridge alternative, Munson alternative, and Dunlap alternative, and an Appendix NN to the section four final EIS. The subpoena to Mr. Robert Tally of FEWA directs him to bring "[a]ll versions of Appendix NN to the section four Final EIS and any report or memo referencing the Munson alternative, the Dunlap alternative, and/or the Ridge alternative." The subpoena to Mr. Stephen Smith of FWS directs him to bring "[a]ll white papers and memorandum from [BLA to FWS] regarding the "Ridge Alternative" or the Munson or Dunlap alternatives, and any appendices to the draft FEIS for section 4." The subpoena to Mr.

2

Thomas Cervone of BLA directs him to bring to the hearing "[a]ll versions of appendix NN to the Section Four Final EIS and any report or memo referencing the Munson alternative, the Dunlap alternative, and/or the Ridge alternative."

The plaintiffs have known since before filing their complaint in August 2011 of their interest in the documents they subpoenaed on the eve of the February 2012 hearing, and that these documents—and testimony about them—are critical, in their view, to the merits of their claims. A recurring theme in the plaintiffs' complaint, described in detail in paragraph 74(d) and otherwise repeated throughout, concerns 2009 motor vehicle emissions data, the use of 2004 data instead, and an analysis completed in 2010 by an INDOT contractor (referring to BLA) regarding vehicle emissions data. (*See* Complaint, Dkt. 1, at pp. 34-40). The six separate subpoenas in February 2012 that demand production of "[a]ll memoranda, reports, emails, or other records referencing the 2009 Fleet mix data and any quality review of such data," are directed to these August 2011 allegations.

The documents and testimony demanded by the other three subpoenas regarding Appendix NN, the Munson alternative, Dunlap alternative, Ridge alternative, and the final EIS for section four relate to allegations that the section four final EIS omits or fails to properly disclose material information—again, allegations about which the plaintiffs have known since at least August 2011.

**The Motions to Quash**

All the subpoenaed parties move to quash the subpoenas on the ground that they impose undue burden, for a variety of reasons. To decide whether the burden to comply with a subpoena is undue, the court evaluates a number of factors, including (a) the materiality of the information sought; (b) the timeliness of the request for information; and (c) the time and expense burden on the subpoenaed parties to comply. *See* Rule 45(c)(3); *CSC Holdings, Inc. v. Redisi,* 309 F.3d 988,

3

993 (7th Cir. 2002); *Morrow v. Air Ride Technologies, Inc.,* 2006 WL 559288 at *2 (S.D. Ind. Mar. 6, 2006) (court should consider relevance, importance, and breadth of information sought, and expense and inconvenience of providing it).

### **Timeliness and Burden**

The timeliness factor militates strongly in favor of quashing the subpoenas. The plaintiffs have had months to conduct discovery and seek the testimony and documents they seek now, yet they chose not to. The preliminary injunction hearing itself is not the proper forum to review documents for the first time or to learn for the first time whether persons have any relevant testimony to give, and how that testimony fits the case.

As to burden, the plaintiffs have not followed agency *Touhy* regulations or otherwise worked with defendants' counsel to obtain testimony from federal and agency officials intended to elicit the agencies' opinions or otherwise bind the agencies. The plaintiffs also have not countered in any way the affidavit testimony of Messrs. Lochmueller, Bernardin, and Cervone, all non-parties, describing the significant inconvenience for them to rearrange their work and personal schedules to appear to testify, and the near impossibility for them to search for and produce the requested documents in the time requested, even if search terms could be developed to efficiently and without undue burden locate responsive documents. One of these men is currently on medical leave and the others have full work schedules that would be difficult to alter, and cannot be altered without neglecting important commitments to clients. And they all live and work nearly 170 miles from the courthouse. Further, the plaintiffs do not explain why these non-parties should be burdened to search for and produce documents that the plaintiffs could obtain— and indeed have requested—from parties. *See Morrow,* 2006 WL 559 288 at *2 (S.D. Ind. March

4

6, 2006) (ability to obtain documents from party is a good reason to forbid burdening a non-party with producing the same documents).

**Materiality**

The parties disagree whether any of the documents or testimony sought by the plaintiffs has any bearing on the issues before the court on the plaintiffs' motion for preliminary injunction. The district judge has provided guidance on this issue. The court's entry today on the federal defendants' motion to strike (or motion in limine) states that "only extrinsic evidence relevant to . . . [show] Defendants' bad faith or faulty procedures in the administrative process will be admissible" at the preliminary injunction hearing. (Dkt. 89 at p. 9).

The plaintiffs contend that their subpoenas are intended to elicit testimony and documentary evidence regarding "bad faith" or "faulty procedures," but they have no idea what any of the subpoenaed parties has to say or whether any of the documents they have subpoenaed will support their theories. Their opposition to the motions to quash is limited to generalities. All the plaintiffs can say, over and over, is that they have "reason to believe" that they will obtain testimony to show that agency officials withheld material information from the NEPA process and administrative record, and they want to examine the key decision makers to see if they can elicit the testimony they want.

As is apparent from the scattershot and duplicative nature of the hearing subpoenas and their service at the eleventh hour—with multiple subpoenas to the same agencies and engineering firm and seeking the same documents—these subpoenas were issued in desperation, to substitute for the orderly discovery that the plaintiffs should have conducted. The plaintiffs want to use the preliminary injunction hearing to find out, for the first time, whether any of the nine different subpoenaed persons have anything relevant to say or documents to provide and what that

information might be.  The plaintiffs have not even disclosed the subject matters about which they expect to question the agency officials, leaving agency counsel in the dark whether these persons are even permitted to speak for the agency.  The court will not allow a preliminary injunction hearing to serve this discovery function.  The hearing is for the presentation of relevant, material evidence in a disciplined fashion.  It is not for forcing the court to preside over broad-based discovery.

Through their own failure to seek and develop evidence in an orderly fashion, the plaintiffs did not (and are unable to) articulate how any of the subpoenaed persons possesses information material to the issues at a preliminary injunction hearing and have failed to allow a reasonable time for any of the persons to search for and produce the subpoenaed documents.  It is apparent that a hearing at this time will not serve a useful purpose if, indeed, as the plaintiffs claim (and the court takes them at their word), the testimony and documents they want are "vital" to their request for preliminary injunctive relief.

The motions to quash (Dkts.  67, 69, 75, 81, 83, 85, 91) are therefore GRANTED.

The magistrate judge will assist the parties to develop a discovery plan that is appropriately targeted to the relevant issues for a preliminary injunction hearing and that can be conducted in a timely fashion.  The court sets this matter for a telephone conference on **February 14, 2012, at 9:00 a.m. (Eastern).   Counsel for all parties, including counsel for employees of BLA and Dawn M. Replogle,[1] are to participate in this conference.**  The court will contact counsel by separate email with the call-in information to be used to participate in the conference.

---

[1]  The court notes that the plaintiffs have actually subpoenaed yet another witness, Ms. Replogle, who filed a motion to quash this afternoon.  That motion is granted and Ms. Replogle's counsel should participate in next week's conference regarding discovery.

So ORDERED.

Date: 02/10/2012

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution to all counsel of record via CM/ECF