UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CITIZENS FOR APPROPRIATE RURAL ROADS, INC., *et al.* <br> Plaintiffs, <br><br> vs. <br><br> RAY LAHOOD, in his official capacity as Secretary of the UNITED STATES DEPARTMENT OF TRANSPORTATION; MICHAEL B. CLINE, in his official capacity as Commissioner of the INDIANA STATE DEPARTMENT OF TRANSPORTATION, *et al.* <br> Defendants. | No. 1:11-cv-01031-SEB-DML |

**ORDER ON DEFENDANT MICHAEL B. CLINE'S MOTION TO DISMISS**

This cause comes before the Court on Defendant Michael B. Cline's Motion to Dismiss for Lack of Prosecution [Docket No. 136], filed on June 10, 2013 pursuant to Federal Rules of Civil Procedure 41(b). For the reasons set forth below, the motion is DENIED.

**Procedural Background**

The motion before us emerges as a justifiable response to the unfortunate and persistent history of dilatory conduct by Plaintiffs' attorney, Mick G. Harrison, in the prosecution of his case. Although discussion of the underlying facts of the parties' dispute is not necessary here, we will briefly review the series of misadventures in motions practice that have led us to this impasse.

Plaintiffs filed their complaint against state and federal Defendants on August 1, 2011. A joint status report filed by the parties more than four months later indicated that Plaintiffs had

1

agreed to a December 19, 2011 deadline for filing a brief in support of their motion for preliminary injunction against further planning and construction of the I-69 project. *See* Docket No. 38 at 17. They missed that deadline, and only eleven days after the appointed time had elapsed did they file a motion for extension of time on December 30, 2011, seeking permission to file the supporting brief that same day. Docket No. 42. Although that motion was ultimately granted, *see* Docket No. 46, Plaintiffs missed their own new deadline, finally filing the brief on their preliminary injunction motion on December 31, 2011. Docket No. 44.

  Plaintiffs had similar difficulties in filing their Amended Complaint on time. After a pretrial conference on December 2, 2011, Magistrate Judge Lynch directed that "any motion for leave to amend must be filed no later than January 2, 2012"—a date that elapsed without any action by Plaintiffs. *See* Docket No. 35. Two days *after* the deadline for filing an amended complaint had passed, Plaintiffs filed an unopposed motion to extend the deadline to January 10, 2012. Docket No. 45. In granting Plaintiffs' motion, Magistrate Judge Lynch registered her displeasure at Plaintiffs' dilatory conduct: "Failing to make a required filing by the deadline or timely seek an enlargement…is a highly perilous course of action in any case. . . . [T]he court cannot and will not tolerate any more of the [P]laintiffs' cavalier approach to court orders it has observed thus far." Docket No. 46 at 2.

  Despite the Magistrate Judge's warning, Plaintiffs continued to miss deadlines. In their opposition to Defendants' proposed Case Management Plan, Plaintiffs asserted both that they would likely challenge the adequacy of the administrative record produced by Defendants, and that they would be prepared for a hearing on their motion for preliminary injunction within two weeks of the anticipated filing of that record. Docket No. 124 at 2–3. The Court responded to Plaintiffs' representations by setting an August 17, 2012 date for any motions to supplement the

administrative record. Defs.' Br. 7. When August 17 arrived, Plaintiffs moved for extension of time, stating they would be ready to file a motion within three days. Docket No. 130. The new date, August 20, came and went without any filing—or explanation of the delay, or request for further extension—from Plaintiffs. Defs.' Br. 7. Less than two weeks later, Plaintiffs missed yet another deadline; they never filed a brief—the deadline for which was set on August 31, 2012 pursuant to their request—substantiating their position that they are entitled to a trial de novo on claims under the Endangered Species Act and Clean Air Act despite the presumptive *res judicata* effect of earlier judicial rulings on those claims. *Id.*

After a lengthy period of further inactivity by Plaintiffs, the Court on March 21, 2013 issued an order directing Plaintiffs to show cause why their failure to prosecute the case should not result in its dismissal. Docket No. 134. Plaintiffs have responded by pointing to two ongoing difficulties marring their attempts to keep abreast of the litigation. First, Mr. Harrison reiterates an extenuating circumstance he had raised in earlier motions for extension of time—that he has been denied the help of a fellow attorney because of longstanding and ongoing illness. *See* Docket No. 134 at 2; *see also* Docket No. 42 at 3; Docket No. 40 at 2–3. Second, Mr. Harrison paints his delays as justifiable, given the "voluminous" nature of the administrative record filed by Defendants in this case, which includes "more than 30,000 documents and significantly more than 100,000 pages." Docket No. 134 at 2. He argues that "Plaintiffs and their counsel have been more active and have spent more time and money in this pursuit than most parties would have done in actively prosecuting a case via court filings." *Id.*

In their response to our order to show cause, Plaintiffs represented that they would be in a position to file "motions and supporting memorand[a] for both summary judgment and preliminary injunction [motions] . . . within 30 days of the instant filing." Docket No. 134 at 3–4.

3

As Defendants have noted, Plaintiffs' missed this May 23, 2013 self-imposed deadline as well, and not inconsiderably so: Plaintiffs' second motion for preliminary injunction and their motion for partial summary judgment did not arrive on the docket until July 5. *See* Docket Nos. 141, 142.

After Plaintiffs responded to our show-cause order but before their chronically tardy motions on the merits had finally appeared, Defendants filed this Rule 41(b) motion to dismiss for lack of prosecution. Docket No. 136. On August 1, at Defendants' request, Magistrate Judge Lynch granted an extension of time for Defendants' briefing in response to Plaintiffs' motions for injunction and summary judgment until 45 days after our ruling on the present motion to dismiss. Docket No. 146.

## **Legal Analysis**

Federal Rules of Civil Procedure 41(b) codifies the federal courts' inherent power to dismiss a case with prejudice when a litigant fails to prosecute it with proper diligence. Fed. R. Civ. Pro. 41(b); *see also Link v. Wabash R.R. Co.,* 370 U.S. 626, 629 (1962) ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted."). The power to dismiss a suit on these grounds lies within a court's discretion, and it arises out of "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link*, 370 U.S. at 629; *see also Easley v. Kirmsee,* 382 F.3d 693, 698 (7th Cir. 2004) (noting that Rule 41 reflects a court's "obligation to control and manage its own docket").

The Seventh Circuit has enumerated six factors that it considers relevant in reviewing district courts' exercise of discretion on Rule 41(b) motions:

> Ideally, the district court should consider [1] the frequency and magnitude of the plaintiff's failure to comply with deadlines for the prosecution of the suit, [2] the

>apportionment of responsibility for those failures between the plaintiff and his counsel, [3] the effect of those failures on the judge's calendar and time, [4] the prejudice if any to the defendant caused by the plaintiff's dilatory conduct, [5] the probable merits of the suit, and [6] the consequences of dismissal for the social objectives of the type of litigation that the suit represents.

*Aura Lamp & Lighting Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 908 (7th Cir. 2003) (citing *Ball v. City of Chi.,* 2 F.3d 752, 759–760 (7th Cir. 1993)). Despite the deep roots of our authority to dismiss for failure to prosecute, we consider such a drastic remedy—which necessarily precludes the resolution of a case on its merits—only as a "last resort." *See Ball,* 2 F.3d at 758.

We now briefly examine the application of the Seventh Circuit's recommended criteria for dismissal to the facts before us.

**1. The frequency and magnitude of Plaintiffs' failure to comply with deadlines**

Repeated failure to adhere to the court's procedural deadlines may warrant dismissal where it "tends to show the indifferent, disrespectful, and insolent attitude an attorney has regarding court orders and the Rules of Civil Procedure." *Allen v. Interstate Brands Corp.,* 186 F.R.D. 512, 515 (S.D. Ind. 1999). Courts will be less likely to credit explanations for counsel's dilatory conduct offered only belatedly, after the attorney or her client are facing the brunt of possible sanctions. *See Dickerson v. Bd. of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1116–1118 (7th Cir. 1994).

Here, we are hesitant to say that Mr. Harrison has demonstrated insolence or disrespect for the court, no matter how frustrating and persistent his tardiness in meeting seemingly every procedural deadline has been. Unlike in cases where dismissal has been found warranted by a record of more egregious misconduct, counsel here has not to our knowledge engaged in "willful or contumacious" behavior indicating bad faith, *cf. Adams v. Trustees of N.J. Brewery Emps.' Pension Trust Fund,* 29 F.3d 863, 875 (3d Cir. 1994) (citing *Nat'l Hockey League v. Metro.*

5

*Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)); nor has he missed hearings or blatantly ignored orders from the Court. *Cf. Daniels v. Brennan*, 887 F.2d 783, 786 (7th Cir. 1989) (approving dismissal where attorney had repeatedly failed to appear as scheduled before the court). Here, Plaintiffs' counsel has been consistent in his explanations for his habitual delay, *cf. Dickerson,* 32 F.3d at 1116–1118, and we have no reason to conclude that he has not communicated with us in good faith.

There is an additional reason to be circumspect in weighing on the gravity of Mr. Harrison's delays in this case. Case law makes clear that although courts are not required to engage in "progressive discipline" before resorting to dismissal, as a general rule "dismissal should be employed only if the district court has determined that it could not fashion an 'equally effective but less drastic remedy.' " *Ball*, 2 F.3d at 758 (quoting *Velazquez-Rivera v. Sea-Land Serv., Inc.*, 920 F.2d 1072, 1076 (1st Cir. 1990)). "More severe sanctions are generally more costly than less severe ones . . . efficiency in sanctions requires that the efficacy of sanctioning the misbehaving lawyer be considered before the sanction of dismissal is imposed on the faultless plaintiff." *Id*. Although the Court has made Plaintiffs aware of the consequences of continued chronic tardiness, we have not to date imposed any lesser sanctions on Mr. Harrison.

**2. The apportionment of responsibility between Plaintiffs and counsel**

In *Link v. Wabash Railroad Co.***,** 370 U.S. 626 (1962), the United States Supreme Court made clear that there are times when a client, no matter how innocent of her attorney's wrongdoing, may justly suffer consequences from that misconduct. The Court noted that the client in that case had "voluntarily chose[n] this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation." 370 U.S.

at 633–634. Nonetheless, the prospect of punishing a client for an attorney's missteps should "induce caution," and the Seventh Circuit has stated that district courts should consider imposing lesser penalties that fall squarely on the attorney—such as contempt citations or professional discipline—before taking a more drastic step that punishes an innocent client. *See Ball*, 2 F.3d at 757. There is less reason for hesitation, of course, where the client is complicit in failing to prosecute the case dutifully—whether by missing court dates, refusing to cooperate with discovery requests, or other instances of delay or obstructionism. *See Allen*, 186 F.R.D. at 521.

As Defendants themselves concede, we have "little basis to apportion responsibility for the failures to meet the deadlines between plaintiffs and counsel." Defs.' Br. 11. According to Mr. Harrison, some of the named Plaintiffs have been assisting in review of the Administrative Record and other tasks; we reject Defendants' suggestion, however, that the clients' involvement in helping Mr. Harrison ameliorate what he insists is one of the root causes of his delay—the "voluminous" nature of the record—makes them complicit in his failure to meet court-imposed deadlines. While some blame may be laid at the feet of Plaintiffs here for entrusting such complex litigation to a practitioner with limited logistical resources, *see Link,* 370 U.S. at 633–634, we have no evidence to conclude that Plaintiffs share direct responsibility for Mr. Harrison's delays.

### 3. Effect on the Court's schedule

The effect of dilatory conduct on the court's schedule should be given the least consideration of the six factors enumerated by the Seventh Circuit. *Allen,* 186 F.R.D. at 522. Such significance as it has lies not in the inconvenience suffered by the Court and its officers, but in the indirect effect that a lawyer's irresponsible conduct can have on the speedy disposition of other cases and the timely vindication of other litigants' rights. Here, Plaintiffs' lengthy periods

of inaction have certainly prolonged the litigation, but neither Plaintiffs themselves nor Mr. Harrison have missed court dates in a manner more directly impacting the Court's schedule. *Cf. Ball,* 2 F.3d at 753 (discussing impact on court where lawyer failed to appear four times).

### 4. Prejudice to Defendants

Even where a Defendant is unable to point to significant concrete harms flowing from a plaintiff's failure to prosecute, "prejudice may be presumed from an unreasonable delay." *Washington v. Walker,* 734 F.2d 1237, 1239 (7th Cir. 1984) (citing 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2370 (1st ed. 1971)). "Defendants are not second-class citizens in our courts. . . . Unwarranted prejudice to a defendant from keeping a suit alive is an important consideration in the choice of sanctions for dilatory behavior from the wide menu available to the district judge." *Ball*, 2 F.3d at 759.

Thus, we must accept Defendants' contention that "the existence of this litigation continues to cast a shadow over the [I-69] project. . . . and INDOT is unfairly and unduly prejudiced by the prolonged uncertainty generated by the existence of the litigation." Defs.' Br. 12. Nonetheless, we note that the prejudice is not as catastrophic to the agencies' (and public's) interest as it could be—planning and construction on the I-69 project have continued throughout, unaffected by Plaintiffs' suit. *Id.*

### 5. Probable merits of the suit

Because briefing on Plaintiffs' motions for preliminary injunction and summary judgment is incomplete pending our resolution of this motion to dismiss, we are not in a position to weigh the probable merits of the underlying dispute. Neither have we had occasion to examine the merits in our earlier rulings. Although we have already denied Plaintiffs' first motion for preliminary injunction, we did so without prejudice; similarly, our September 2012 grant of

Defendants' motion for partial dismissal rested on the conclusion that certain claims were time-barred and did not reach the crux of the dispute. *See* Docket No. 132.

**6. Consequences of dismissal for the social objectives of this type of suit**

The cause of action provided by Section 706 of the Administrative Procedure Act is intended to ensure "comprehensive review of a 'broad spectrum of administrative actions,' including those … for which no review is available under any other statute." *Citizens Comm. for Hudson Valley v. Volpe*, 425 F.2d 97, 102 (2d Cir. 1970) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 140 (1967)). Like civil rights suits, actions under the APA serve as the centerpiece of a "regulatory regime" designed to vindicate the underlying policy concerns of statutes like NEPA and the Clean Air Act. *See Ball*, 2 F.3d at 757. "The deterrent objective is defeated if a suit is dismissed for failure to prosecute; the defendant walks away scot free even if he did in fact commit the tort for which the plaintiff is suing." *Id.*

Notwithstanding this largely self-evident general principle, Defendants argue that dismissal here will promote the public interest by clearing an impediment to the completion of a large public works project, and by providing an incentive to diligence for future public-interest plaintiffs. They insist that "a dismissal for lack of prosecution here actually advances the 'social objectives' of this type of environmental case by ensuring that lawsuits such a this are properly used to make certain, in a timely fashion, that agencies have factored environmental concerns into their decision-making process." Defs.' Br. 13. We see the policy implications of a dismissal here as equivocal; while it doubtless advances the purposes of the APA to incentivize diligent conduct by environmental litigants and their attorneys, we agree with Plaintiffs that we should be wary of dismissing this type of suit on grounds of an attorney's timeliness problems rather than the merits of their challenge to administrative action. *See* Pls.' Resp. 6–7.

**Conclusion**

Dismissal under Rule 41(b) is a rare, drastic remedy that runs counter to the principle that cases should be decided according to their merits. *See generally Davis v. Williams,* 588 F.2d 69, 70 (4th Cir. 1978); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2370 (1st ed. 1971). Although it has been a lamentably long time coming, it appears that an opportunity to address the merits may now be before us. In light of the fact that our review of the discretion-channeling guidelines provided by the Seventh Circuit does not point strongly towards dismissal, we elect to proceed to consideration of Plaintiffs' motions for preliminary injunction and summary judgment, and any substantive motions Defendants may present. Plaintiffs' counsel has, thus far, fallen considerably short of the standards expected of a diligent advocate, but we stop short of visiting "the sins of the agent" on the principal. *Cf. Ball*, 2 F.3d at 756. With hopes that Plaintiffs' counsel will take advantage of our exercise of discretion by injecting a new spirit of punctuality into his conduct of this case, we DENY Defendants' motion to dismiss.

We do, however, find that a lesser sanction is appropriate here. We are authorized by statute and by the Federal Rules of Civil Procedure to impose sanctions, including reasonable attorneys' fees and costs, on parties failing to obey scheduling or other pretrial orders. *See* 28 U.S.C. § 1927 (authorizing sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously"); Fed. R. Civ. Pro. 16(f)(1)(C). We therefore order Plaintiffs to compensate Defendants for the attorneys' fees reasonably incurred in preparing and briefing this motion to dismiss.

IT IS SO ORDERED.

Date: _10/25/2013_____

_Sarah Evans Barker_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Mick G. Harrison
mickharrisonesq@earthlink.net

William G. Malley
wmalley@perkinscoie.com

Daniel P. King
FROST BROWN TODD LLC
dking@fbtlaw.com

Timothy J. Junk
OFFICE OF THE ATTORNEY GENERAL
tim.junk@atg.in.gov

Albert M. Ferlo
PERKINS COIE LLP
aferlo@perkinscoie.com

Elisabeth C. Frost
PERKINS COIE LLP
efrost@perkinscoie.com

Daniel W. Pinkston
U.S. DEPARTMENT OF JUSTICE
daniel.pinkston@usdoj.gov

John Brett Grosko
U.S. DEPARTMENT OF JUSTICE
brett.grosko@usdoj.gov

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov

Jared S. Pettinato
UNITED STATES DEPARTMENT OF JUSTICE
jared.pettinato@usdoj.gov

Jean Marie Blanton
ZIEMER STAYMAN WEITZEL & SHOULDERS LLP
jblanton@zsws.com